Battle, J.
 

 This was an action of ejectment, tried at Moore Superior Court, before his Honor, Judge Manly, at Spring Term, 1858. The plaintiff’s lessor claimed under a sheriff’s deed, founded on certain levies and subsequent proceedings on justice’s judgments, and sought to recover against the defendants in the executions, John and "William Hancock, and also against Daniel Short, who has been permitted to defend as their landlord.
 

 The lessor of the plaintiff had obtained judgments rendered by two justices of the peace against John and William Hancock severally, on 24th of June, 1854, on which executions issued on 29th day September following. These executions were severally levied on 2nd day of October, 1854, upon certain articles of personal property, and “ for the want of a sufficiency of goods and chattels,” were levied on the land in controversy. These levies were made by IL IT. Worthy, sheriff, by E. A. Cole, D. S., and on the 15th day of December, 1854, the personal property was exposed to sale by Thomas W. Eitter,
 
 *280
 
 sheriff, by R. A. Cole, D. S., when some articles -were sold, and the rest not sold for the want of bidders, being claimed by different members of the family of the defendants. The return, after stating these facts, adds: “ Then renewed my levy on the above named land, this 15th day of December, 1854, to wit, on 300 acres, more or less, as the property of John Hancock, sen’r., on the south side of Deep River, adjoining the lands of Harris Tysor and others, the land on which the said Hancock now lives.” Signed, T. W. Ritter, sheriff, by R. A. Cole, D. S. The execution against William Hancock had the following return : “No goods nor chattels of the defendant to be found in my county, therefore, levied the above execution on a certain tract of land, supposed to contain 300 acres of land, as the property of William Hancock, on the south side of Deep River, adjoining the lands of Harris Tysor and perhaps others. Oct. 2nd, 1854.” (Signed) K. H. Worthy, sheriff, by R. A. Cole, D. S. “I renewed my levy on the above named lands, this December 15th, 1854.” (Signed,) T. W. Ritter, by R. A. Cole, D. S.
 

 These levies were returned to the County Court, of which the defendants therein were duly notified, and orders were, by the Court, duly made for the sale of the land, and it was sold by the sheriff under writs of
 
 vend. expo.
 
 duly issued, when the plaintiff’s lessor became the purchaser and took a deed from the sheriff.
 

 The defendant contended that the levies were illegal and insufficient to sustain the orders of the County Court, founded thereon, and that the sale of the land was therefore void. Ilis Honor held otherwise, and a verdict was rendered in favor of the plaintiff. The defendant moved for a new trial, which was refused, and a judgment given against him, from which he appealed.
 

 In the argument here, the counsel for tire defendant urges two objections against the plaintiff’s recovery. The first is, that after the justice’s execution had been levied by the sheriff Worthy, it was, before the return day, renewed by his successor Ritter ; and the second is, that it appeared from the
 
 *281
 
 return, endorsed on the execution against John Hancock, that he had porsonal property, and that therefore the order for the sale of the land was void.
 

 The first objection is clearly untenable. At the sale of the chattels, all of them which were not sold, were claimed by other persons, and for that reason no person would bid for them. The writ of execution was still in the hands of the officer, and he certainly had the right to levy upon the defendant’s land, or renew a former levy, as it could not possibly be a wrong to the defendant to'do either the one or the other. It appears that the same person was the deputy of both the former and the existing sheriff, and it was his duty, under the authority of the one or the other, to- make a return of the levy to the next succeeding County Court. He had nothing to do with the land, except to return the execution with the levy endorsed, to the Court; and this was done, and the returns show levies by-both sheriffs.
 
 We
 
 cannot imagine any good, or even plausible reason, why the levies should annihilate each other; and if either were good, it is sufficient to sustain the order of sale by the Court. "We have examined the cases of
 
 Nesbitt
 
 v.
 
 Ballow,
 
 3 Hawks. Rep. 57, and
 
 Tarkington
 
 v.
 
 Alexander,
 
 2 Dev. and Bat. Rep. 87, referred to by defendant’s counsel in support of his first objection, and neither of them opposes the view which we have taken of it. In the first of these cases, it was merely held that an officer could not return “
 
 nidia
 
 bonaon a justice’s execution, before the return day, for the purpose of proceeding against the bail; and the second has no relation to the levy and return of a justice’s execution on land.
 

 The second objection is equally without any valid foundation to support it. The case’ of
 
 Henshaw
 
 v. Bronson, 3 Ire. Rep. 298, relied upon by the counsel, decided that the County Court would be justified in refusing to make an order for the sale of land levied on, where it appeared that personal chattels had also been seized, and the return did not show what had been done with them. In the present case, the return did show that some of the articles levied on, had been sold,
 
 *282
 
 and the proceeds properly applied, and that the remainder could not be sold, because they were claimed by other per* sons. The present case differs from the one relied upon in another important particular, to wit, that the Court did make the order of sale, and the land was sold under it.
 

 In
 
 Jones
 
 v.
 
 Austin,
 
 10 Ire. Rep. 20, in overruling a similar objection, the court said :
 
 “
 
 But when the order is made, then the Court must be presumed to have acted rightly — to have acted upon an admission or waiver of notice, or a waiver of the search for goods and chattels, or of an account of those appearing to have been levied on, before the levy was made upon the land. No collateral enquiry can, then, be made into the regularity of the order; that is, an enquiry not made in a proceeding instituted by the party expressly for the purpose of having it set aside for irregularity, or reversed for error. And until thus set side or reversed, it will sustain any right acquired under it, and therefore will sustain the title of a purchaser, at a sale, made under an execution issuing upon it.”
 

 Per Curiam:, The judgment must be affirmed.